UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE JESSE MOORE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>HEATHER DIAZ,<br><br>　　　　Defendant. | Case No. 1:20-cv-00865-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANT DIAZ FOR FAILURE TO PROTECT AND DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, AND THAT PLAINTIFF'S RETALIATION CLAIM BE DISMISSED<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

　　　Terrence Jesse Moore ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on June 23, 2020. (ECF No. 1). The complaint is before this Court for screening.

　　　The Court has reviewed the complaint and finds that the following claims should process past the screening stage: Plaintiff's Eighth Amendment claims against defendant Diaz

for failure to protect and deliberate indifference to serious medical needs.

Accordingly, the Court issues these findings and recommendations to the assigned district judge, recommending that this case proceed on Plaintiff's Eighth Amendment claims against defendant Diaz for failure to protect and deliberate indifference to serious medical needs, and that Plaintiff's retaliation claim be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file her[1] objections.

## I.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts

---

[1] Plaintiff is a male-to-female transgender inmate.  (See, e.g., ECF No. 1, p. 12; E.D. Cal Case No. 1:20-cv-00397, ECF No. 1).

"are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

**II.     SUMMARY OF PLAINTIFF'S COMPLAINT**

Plaintiff alleges as follows in her complaint:

At all times relevant, Plaintiff was housed at Kern Valley State Prison ("KVSP").

On December 18, 2019, Plaintiff suffered a mental breakdown. Plaintiff was admitted into KVSP's Mental Health Crisis Bed, and was put on suicide watch.

Upon Plaintiff's arrival to the Mental Health Crisis Bed, Plaintiff underwent a thorough strip search. Her body and clothes were thoroughly searched to ensure she had no contraband on her person. Once it was confirmed by KVSP officers, Plaintiff was put into a suicide prevention gown. After Plaintiff was put in the gown she was approached by H. Diaz, a psychologist. Defendant Diaz appeared very angry. She immediately told Plaintiff, "I know who you are and I'm going to make sure you don[']t get what you want here for what you did to my friend!" Plaintiff told her Plaintiff had no idea what she was talking about. She said, "You know exactly what I'm talking about! You like to throw milk!"

Plaintiff then remembered what she was talking about: an incident that had occurred about five and a half months earlier. Plaintiff told her, "[t]hat's a dead issue. That happened 5 months ago and it didn[']t even involve you, so why are you tripping?" She responded by saying, "[t]hat was my friend and you made her cry. You won[']t be getting any help here for what you did to her." She went on to say how she would get Plaintiff back somehow before storming off and telling the officers to come get Plaintiff.

Plaintiff was taken to a cell and went to sleep. About two days later, on December 20, 2019, defendant Diaz came to Plaintiff's door and woke Plaintiff up. Defendant Diaz seemed to be in a much better mood and was not yelling at Plaintiff anymore. So, Plaintiff got up to

see what she wanted.  Defendant Diaz asked Plaintiff some routine questions, and specifically asked Plaintiff, "[a]re you suicidal?"  Plaintiff said, "[y]es."  Defendant Diaz responded by dropping something on the ground and kicking it under Plaintiff's door with her foot, saying "[p]rove it then," and walked away.

Plaintiff looked on the floor and saw what appeared to be two rounded pieces of metal and two razor blades.  Inmates are not allowed to have razors in KVSP.  Plaintiff picked up the stuff and put it on her sink.  Plaintiff was not in her right state of mind and was suffering from a mental breakdown, which is why she was on suicide watch in the first place.

Plaintiff took all of the metals and swallowed them, in hopes that she would choke on the two round pieces of metal and that the razor blades would slice something vital on the way passing through her body, and she would die.  Plaintiff did not really want to die, but was suffering from a mental breakdown.  Defendant Diaz was fully aware of this when she gave Plaintiff the metal and razors.

After a while Plaintiff felt a sharp pain in her chest and stomach.  She was laying on the floor when a nighttime nurse came by for checks and asked if Plaintiff was okay.  Plaintiff told her that she felt stomach and chest pain.  The nurse left and came back with another nurse, and they questioned Plaintiff.  Plaintiff told them that she had swallowed some metals and razors.  Plaintiff does not know what they did after that.

Early in the morning on December 21, 2019, Plaintiff was approached by California Department of Corrections and Rehabilitation ("CDCR") officers and told that she was going to the hospital.  She was taken to Bakersfield Adventist Hospital in Bakersfield, California.  The doctors X-rayed Plaintiff's stomach and determined that she had four pieces of metal in her stomach.  They said it was not life threatening, but it could have been.  They also said that the metals would most likely pass through, and put Plaintiff on laxatives to help.

Later, Plaintiff was taken back to the prison.

Two days later, on December 23, 2019, Plaintiff was taken to the correctional treatment center to be X-rayed.  Plaintiff was escorted by the second watch sergeant.  They determined that a couple of pieces of metal were still in Plaintiff and a couple had passed.  The sergeant

noticed the razors in Plaintiff and asked, "[h]ow'd you get some razors? [W]e don[']t have razors in this prison." Plaintiff told him that she got them from defendant Diaz, and he said "[p]lease don[']t tell me that. I'll pretend I didn[']t hear it."

A few days later Plaintiff was sent back to the administrative segregation unit. A couple days after her return, Plaintiff was able to obtain a healthcare 602. Plaintiff wrote a grievance about defendant Diaz's misconduct.

On March 19, 2020, Plaintiff received her institutional level response, which was days late. Plaintiff was told in the response that defendant Diaz was not even interviewed and that defendant Diaz's actions did not violate CDCR policy. Of course Plaintiff was not satisfied and forwarded her 602 to the final level. Plaintiff received her response from the final level on May 28, 2020, and was told that defendant Diaz's actions did not violate CDCR policy. They also attempted to minimize violating Plaintiff's time constraints and tried to make it seem unimportant, but it is very important because had Plaintiff been even a day late with the filing of her 602 or any response, she would have had her 602 rejected and the matter immediately dismissed pursuant to Title 15. They admitted to violating Title 15, but made excuses for why it is okay for them not to follow the rules, but not inmates. Plaintiff was told that her administrative remedies were exhausted.

Plaintiff alleges her Eighth Amendment right to be free from cruel and unusual punishment was violated when defendant Diaz first refused to perform her duties as a member of the mental health staff and when she told Plaintiff that Plaintiff would receive no help. Furthermore, defendant Diaz had a duty to prevent Plaintiff's suicide. She is trained for this and is on a suicide prevention team, but in anger and a grudge fueled rage she deliberately carried out her premeditated retaliation against Plaintiff.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Failure to Protect in Violation of the Eighth Amendment

To establish a failure to protect claim, the prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'Deliberate indifference' has both subjective and

objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837.  "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Plaintiff alleges that she suffered a mental breakdown and was placed on suicide watch. Instead of helping Plaintiff, defendant Diaz, who was a psychologist on the suicide prevention team, gave Plaintiff two rounded pieces of metal and two razor blades.  Plaintiff took all the metals and swallowed them.

Liberally construing Plaintiff's allegations, Plaintiff has sufficiently alleged that defendant Diaz knew of an excessive risk to Plaintiff's safety but disregarded that risk. Accordingly, Plaintiff's failure to protect claim should proceed passed the screening stage.

### B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d

1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

      A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

      Plaintiff alleges that she suffered a mental breakdown and was placed on suicide watch. However, defendant Diaz, who was a psychologist on the suicide prevention team, refused to provide Plaintiff with any care.  Defendant Diaz refused to provide care because she did not like Plaintiff based on a prior incident between Plaintiff and Defendant's friend.  Two days later, defendant Diaz came to Plaintiff's door.  Defendant Diaz asked Plaintiff some routine questions, and specifically asked Plaintiff, "[a]re you suicidal?"  Plaintiff said, "[y]es." Defendant Diaz responded by dropping two rounded pieces of metal and two razor blades on the ground and kicking them under Plaintiff's door with her foot, saying "[p]rove it then." Plaintiff later took all the metals and swallowed them.

      Liberally construing Plaintiff's complaint, the Court finds that Plaintiff has sufficiently alleged that defendant Diaz knew that Plaintiff had a serious medical need, but intentionally

decided not to help Plaintiff (and in fact attempted to harm Plaintiff). Accordingly, Plaintiff's deliberate indifference to serious medical needs claim should proceed passed the screening stage.

### C. Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Retaliation claims are not limited to the First Amendment. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

Plaintiff alleges that, in retaliation, defendant Diaz refused to provide her with care and gave her pieces of metal so that she could harm herself. However, Plaintiff has not alleged that she was retaliated against because she engaged in constitutionally protected conduct. Instead, Plaintiff appears to allege she was retaliated against because she previously threw her milk. Thus, Plaintiff has failed to state a retaliation claim under the Constitution.

### IV.   CONCLUSION AND RECOMMENDATIONS

The Court has screened the complaint and finds that it states cognizable Eighth Amendment claims against defendant Diaz for failure to protect and deliberate indifference to serious medical needs. The Court also finds that Plaintiff's complaint fails to state a retaliation claim.

As the deficiencies in the only claim the Court is recommending be dismissed do not appear to be curable by amendment (based on Plaintiff's allegations, it appears that Plaintiff was not retaliated against because she engaged in constitutionally protected conduct), the Court does not recommend granting leave to amend.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's Eighth Amendment claims against defendant Diaz for failure to protect and deliberate indifference to serious medical needs; and
2. Plaintiff's retaliation claim be dismissed.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:  **June 29, 2020**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE